**CIVIL ACTION NO. 17-155-DCR-CJS**

**MICHAEL EVERSOLE**                                               **PLAINTIFF**

**v.**                        **REPORT AND RECOMMENDATION**

**JENNIFER PRIVETT**                                               **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant Jennifer Privett's Motion for Summary Judgment (R. 33), which has been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (*See* R. 8).  Plaintiff did not file a Response to Defendant Privett's Motion, and his time to do so has now expired.  *See* Rule 7.1(c) of the Joint Local Rules of Civil Practice for the United States District Courts for the Eastern and Western Districts of Kentucky ("LR 7.1(c)").  For the reasons set forth below, the undersigned **recommends** Plaintiff's claims against Defendant Privett be **dismissed with prejudice**, and this action be stricken from the active docket of this Court.

## I.    FACTS

At the time of the factual circumstances giving rise to this action, Plaintiff Michael Eversole was an inmate confined at the Fayette County Detention Center ("Detention Center") in Lexington, Kentucky.  On February 27, 2017, Plaintiff filed a Complaint, *pro se*, alleging that Defendants Rodney Ballard, Jailer, Officer Jourdan, and Jennifer Privett, Head Nurse, acting under color of state law, violated his rights under the Eighth Amendment while he was incarcerated at the Detention Center.  (R. 1-1).  In his Complaint, Plaintiff alleges he was arrested and housed in

the Detention Center on October 4, 2015. He asserts that because he has epilepsy and a history of seizures, he was given a restriction that required he be housed on the lower level of the Detention Center and that he be assigned to a bottom bunk. (*Id*.). Plaintiff claims that despite this restriction, he was assigned a top bunk, which ultimately led to his injury.

Specifically, Plaintiff contends that in April 2016, he was placed in a cell on the second floor and assigned a top bunk. (*Id*.). He asserts that he informed Officer Jourdan of his restriction to a bottom bunk, and he claims Officer Jourdan told him "this is the bunk you were assigned" and "there was nothing he could do about it." (*Id*. at 18-19). Plaintiff asserts he repeatedly complained to Officer Jourdan that he should not be assigned to the upper floor or to a top bunk, but Officer Jourdan ignored his complaints and did not report his complaints to the classification staff. (*Id*. at 18-21).

Plaintiff alleges that on April 25, 2016, he climbed into his top bunk and went to sleep. (*Id*. at 19). He claims he woke up on the floor surrounded by officers and nurses. (*Id*.). Plaintiff contends that another inmate alerted Officer Hendricks that Plaintiff had fallen off his bunk and was having a seizure. (*Id*.). Officer Hendricks allegedly entered Plaintiff's cell, saw Plaintiff appeared to be having a seizure and initiated a Code 100 for assistance. (*Id*.). Nurses responded, and Plaintiff was moved to a medical cell. (*Id*.).

Plaintiff asserts that the day after his fall, he sent a grievance to the Detention Center complaining that he had informed Officer Jourdan several times that, because of his seizures, he was not to be on the second floor and was not to be assigned a top bunk. (*Id*. at 19). In the grievance, Plaintiff claimed that because Officer Jourdan ignored his complaints, he suffered

injury when he fell off the bunk, causing further injury to his lower back for which he was already receiving treatment.[1]

Plaintiff states that after the fall he filed several medical slips and complained to medical staff that the pain he was experiencing was getting worse, and he asked to be sent for an MRI. (*Id.* at 19). He claims Nurse Privett told him he would not be sent to see an outside doctor or to have an MRI, and he then "filed a[] grievance because he thought medical was just trying to put him off." (*Id.* at 19). However, he admits that he received medical attention in May 2016, and a doctor at the Detention Center ordered an x-ray. (*Id.*). When the doctor saw the results of the x-ray, which Plaintiff contends revealed "a massive amount of infection" in his back, the doctor ordered an MRI. (*Id.* at 19-20). Plaintiff states that although an MRI was ordered, he was not sent for the MRI until July–almost 60 days later. (*Id.* at 20). Eversole states that the MRI showed the infection in his back had spread to his bones, and he was sent to University of Kentucky Hospital and then to the Kentucky State Reformatory for treatment. (*Id.*). Plaintiff also asserts that a doctor at the hospital told him the trauma from the fall most likely caused the infection to spread to his bones. (*Id.* at 22).

Plaintiff filed this action in the Circuit Court of Fayette County, Kentucky, on February 27, 2017. Plaintiff's Complaint alleged violations of his Eighth Amendment rights, seeking $150,000 in compensatory damages from each Defendant because he claims he will never be able to work at his trade as a roofer or perform any manual labor due to the ongoing back issues from the infection spreading to his bones. (*Id.* at 22). He also seeks $150,000 in punitive damages from

---

[1] Plaintiff also asserts that within weeks after being arrested, he started complaining of back and testicular pain. (R. 1-1, at 18). Plaintiff asserts he continued to have pain and was treated, but claims he was misdiagnosed and did not get better. (*Id.*).

each Defendant and that all his medical treatment for his back be paid for by Defendants.[2] (*Id.* at 22).

Defendants Ballard and Privett removed the case to this Court and each filed an Answer to Plaintiff's Complaint. (R. 1, 4, 7). On April 10, 2017, the Court entered a Scheduling Order requiring Plaintiff to disclose expert witnesses by July 10, 2017, and to file dispositive motions by October 31, 2017. (R. 10). The Scheduling Order also expressly stated that "Plaintiff shall keep the Clerk of the court informed of his current mailing address. Failure to notify the Clerk of any change of address may result in dismissal of this case."[3] (R. 10, at 2). Plaintiff Eversole and Defendant Privett exchanged written discovery, but no depositions were conducted. (*See* R. 15, 30). Eversole did not timely disclose any expert witnesses.

On April 10, 2017, the Court issued an Order notifying Plaintiff that the record failed to demonstrate that Defendant Jourdan had been served with the Summons and Complaint, and informing Plaintiff of his responsibility to provide a proper address for service of process. (*See* R. 11). The Court also informed Plaintiff that Rule 4(m) of the Federal Rules of Civil Procedure requires Plaintiff to serve each Defendant within 90 days of filing a complaint. Consequently, Plaintiff was ordered to provide a current address for Defendant Jourdan by May 18, 2017. (*Id.*).

---

[2] Plaintiff captioned his Complaint as a "Civil Action and Injunction Pursuant to KRS 413.140." (R. 1-1). He does not, however, otherwise explain what action he seeks to enjoin, and the statute he cites is not on point as it merely sets forth what causes of actions must be brought within one year. Failing to come forth with any assertions or argument with respect to Plaintiff Eversole's request for injunction, the issue will not be further discussed.

[3] Plaintiff has failed to keep the Court apprised of his current address. Prior to the filing of this pending motion, the Court learned the record did not reflect that Plaintiff had been transferred from the Kentucky State Reformatory in La Grange, Kentucky, to Roederer Correctional Complex in La Grange, Kentucky. The Court informed the Clerk's Office of the change of address and the docket was updated. Defendant Privett originally served the subject Motion at the Kentucky State Reformatory facility. On September 8, 2017, the Court ordered Defendant Privett to serve the subject Motion on Plaintiff at the Roederer Correctional Complex and to file an updated Certificate of Service. (*See* R. 35). Defendant Privett complied, and filed a Notice of Updated Certificate of Service on September 8, 2017. (*See* R. 36).

Plaintiff failed to do so by the date set forth in the Court's Order. On June 2, 2017, the Court gave Plaintiff additional time to provide an address for Jourdan; however, the Court warned Plaintiff that if he failed to provide an address where Jourdan could be served, or failed to otherwise comply with Civil Rule 4(m) by June 16, 2017, the undersigned would recommend to the presiding District Judge that Plaintiff's claim against Jourdan be dismissed without prejudice. (R. 22). Eversole did not comply with the Court's Orders, did not effect service on Defendant Jourdan, and did not seek an extension of time to do so. (*See* R. 34).

Thereafter on May 30, 2017, Defendant Ballard moved for judgment on the pleadings with respect to all claims asserted against him. (R. 20). Eversole did not respond to the motion. The District Court agreed with the undersigned's recommendation that all claims against Ballard should be dismissed. (*See* R. 34) (dismissing Eversole's claims against Ballard with prejudice). Plaintiff's claim against Officer Jourdan was also dismissed for Plaintiff's failure to serve process or otherwise comply with the Court's Orders. (*Id.* (dismissing Eversole's claims against Jourdan without prejudice)). Accordingly, the only remaining issue in this civil action is Eversole's claim against Defendant Privett pursuant to 42 U.S.C. § 1983.

On September 5, 2017, Defendant Privett timely filed a Motion for Summary Judgment. (R. 33). In her dispositive motion, Defendant Privett argues that summary judgment is appropriate because expert testimony is required to prove liability for negligent medical treatment under Kentucky state law, and Plaintiff cannot satisfy his burden of proof to support his claim against her because he failed to timely disclose any expert witnesses. (R. 33). The deadline for Eversole to submit a response to Privett's subject Motion was September 26, 2017. *See* LR 7.1(c). Eversole

failed to file any such response, nor did he seek an extension of time to respond.[4]  Accordingly,

Defendant Privett's Motion for Summary Judgment is ripe for review.

## II.    STANDARD OF REVIEW

Under the federal rules, summary judgment is appropriate if there is no genuine dispute as

to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  A genuine dispute of material fact exists if "there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party."  *Brown v. Chapman*, 814 F.3d 447,

464 (6th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The trial

court does not "weigh the evidence and determine the truth of the matter but . . . determine[s]

whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  To determine whether

a genuine dispute of material fact exists, therefore, "the court must pierce the pleadings and assess

the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that

are part of the record."  *Brown*, 814 F.3d at 464.

In reviewing motions for summary judgment, the Court must view all facts and draw all

reasonable inferences in a light most favorable to the nonmoving party.  *See Matsushita Elec.*

---

[4] The Sixth Circuit has held that when a plaintiff fails to respond to a motion, the district court may deem the plaintiff to have waived any opposition to the motion. *See Scott v. State of Tenn.*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (table decision) ("if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."); *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) ("where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived").  Local Rule 7.1(c) also provides that "[f]ailure to timely respond to a motion may be grounds for granting the motion."  By failing to file a response to Defendant Privett's pending Motion, Plaintiff has waived any objection he might have to the Motion.

However, the Sixth Circuit has also held that where the granting of a motion will result in the dismissal of an action, the Court should exercise some caution to at least ensure the moving party has met its burden.  *See Carver v. Bunch*, 946 F.2d 451, 453-54 (6th Cir. 1991) (finding a plaintiff's failure to respond to a motion to dismiss did not amount to a failure to prosecute, and district court erred in dismissing plaintiff's complaint based solely on his failure to respond to the motion).  Thus, dismissal of Plaintiff's claims against Privett is not being recommended based solely on Plaintiff's failure to file a Response thereto.

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). The nonmoving party, however, must provide more than a "mere scintilla of evidence" and there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Dominguez*, 555 F.3d at 549. Also, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Moreover, while courts must apply "less stringent standards" in determining whether pro se pleadings state a claim for which relief may be granted, the lenient treatment generally accorded to pro se litigants has limits, and they are not automatically entitled to take every case to trial. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

## III.    ANALYSIS

Construing Plaintiff's Complaint broadly, he is asserting Defendant Privett, in both her individual capacity and her official capacity as head nurse of the Detention Center, violated Plaintiff's Eighth Amendment rights while acting under color of state law in violation of 42 U.S.C. § 1983. With respect to Defendant Privett, Eversole claims that by allegedly delaying or denying medical treatment, Privett "was deliberately indifferent when she failed to respond appropriately or at all to Mr. Eversole's serious medical need." (R. 12, at 9). Defendant Privett's Motion for Summary Judgment argues that "there is no evidence of negligence on the part of the Defendant, and she is therefore entitled to judgment as a matter of law." (R. 33, at 1). Defendant further contends that "this is a medical malpractice action" and without expert evidence in support of his allegations, "Plaintiff cannot produce any evidence that his treatment by Defendant fell below the standard of care" under Kentucky law. (R. 33-1, at 1).

Based upon the language of the Complaint itself, however, as well as the Supreme Court authority directed at deliberate indifference under § 1983 cited therein, Plaintiff's claim against Defendant Privett is based solely upon § 1983, as opposed to state law claims for negligence. (*See* R. 1-1, at 21 (citing, e.g., *Farmer v. Brennan*, 511 U.S. 825 (1994))). Only with respect to his claim against Defendant Jourdan did Plaintiff assert any allegations as to negligence. (*See id.* at 22). A § 1983 claim does not bear the same legal standard as a state law negligence claim. *See Smith v. Franklin County*, 227 F. Supp. 2d 667, 678 (E.D. Ky. 2002) (citing *Estelle*, 429 U.S. at 106) (allegations of medical malpractice or negligent diagnosis and treatment do not state a claim under § 1983 deliberate indifference standard). Nonetheless, Defendant Privett is correct that she is entitled to summary judgment as, even viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, there is insufficient evidence for a jury to return a verdict for Plaintiff, and his claim fails as a matter of law. Alternatively, Plaintiff's claims should be dismissed for failure to prosecute.

### A.    Plaintiff's claims should be dismissed with prejudice on the merits.

#### 1.    Plaintiff's official capacity claim against Privett warrants dismissal.

Plaintiff's Complaint states he is suing Defendant Privett in both her individual and official capacities. (R. 1-1, at 18). Individuals sued in their official capacities "stand in the shoes" of the entity they represent. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Accordingly, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. *See also Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978) (stating that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68 (1989) ("A

suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.").  Here, Plaintiff's Complaint names Privett as a Defendant based on her employment status as head nurse for the Detention Center itself.  (*See* R. 1-1, at 1-2 (naming "Jennifer Privett, Head Nurse" and alleging "Defendant Jennifer Privett, Head Nurse Fayette County Detention Center is responsible for the running of the medical care of the Prisoners housed in the Fayette County Detention Center.")).  As a result, Plaintiff's official capacity claim against Privett is to be treated as a claim against the Detention Center, the government entity that employed her.  (*See* R. 4, at 2 ¶ 5).

The scope of § 1983 does not extend to permitting a municipal entity to incur liability under a theory of *respondeat superior*.  *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005). Liability may be imputed to the Detention Center pursuant to § 1983 only where "a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights."  *Monell*, 436 U.S. at 694-95.  Thus, Plaintiff must demonstrate that (1) a violation of a federal right took place, (2) the defendants acted under color of state law, and (3) a municipality's policy or custom caused that violation to happen.  *Vidal v. Lexington-Fayette Urban Cty. Gov't*, 13-117, 2014 WL 4418113, at *2 (E.D. Ky. Sept. 8, 2014) (citing *Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014)).

Here, neither Plaintiff's Complaint, nor evidence produced in discovery, nor any other evidence available in the record, indicates that a policy, custom, or practice was the moving force behind Defendant Privett's alleged violation of Plaintiff's constitutional rights.  Even considering Plaintiff's Response to Answer, a filing not authorized by the Court, Plaintiff has not alleged any specific municipal policy, custom, or practice he contends was the moving force behind the alleged violation of his constitutional rights.  Plaintiff does not identify or describe any policy or custom

to which he is referring. *See Vidal*, 2014 WL 4418113, at *3 (Plaintiff "must describe what the official custom or policy was and describe how it was violated."). At most, his filing can be construed as asserting that Defendant Privett in her official capacity failed to comply with the grievance process by "refus[ing] him medical treatment despite the numerous grievances regarding the severe pain he was suffering after he fell off the top bunk." (R. 12, at 9). This statement, however, even viewed in the light most favorable to Plaintiff, only supports a finding that Privett failed to comply with the Detention Center's grievance policy.

Lacking any evidence of a specific policy or custom, Defendant contends that "though there is no valid policy that justifies Ms. Privett's actions, the 6th Circuit Court had determined that unconstitutional policies don't need to be written." (R. 12, at 8 (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1243 (6th Cir. 1989))). However, the Sixth Circuit has explicitly stated that such unwritten customs require "proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Miller*, 408 F.3d at 814 (citing *Memphis, Tenn. Area Local v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004)). In the case at hand, there is no proof of the knowledge of policymaking officials and their acquiescence in an established practice.

First, there is no evidence that Defendant Privett is a policymaking official. "Although it is true that final policymaking authority may be delegated . . . mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Miller*, 408 F.3d 803, 814 (internal citations omitted) (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)). In light of this standard, Plaintiff's argument finds no support in the record. Plaintiff has made no allegations, nor offered

any testimony, discovery, or other evidence in the record to demonstrate that Defendant Privett had final, unreviewable discretion unconstrained by the official policies of superior officials.

Second, there is no evidence of acquiescence of policymaking officials in an established practice. In *Leach*, the authority relied on by Plaintiff in support of his allegation, the district court found at a bench trial that there was sufficient proof of the knowledge of policymaking officials and their acquiescence when there was evidence that other inmates at the facility had been similarly mistreated without consequence. *Leach*, 891 F.2d at 1243. The facts in *Leach*, therefore, sufficiently demonstrated a "custom or policy" of the county because "there had been enough similar incidents" such that "there was evidence of numerous instances of abuse of paraplegic or physically infirm inmates" to put the prison officials on notice. *Id.* at 1247. The circumstances at issue in *Leach* are distinguishable from the matter at hand, where Plaintiff has made no allegations, nor offered any testimony, discovery, or other evidence in the record to demonstrate any similar incidents occurred or that policymaking officials otherwise had notice of Defendant Privett's alleged actions. In sum, Plaintiff has failed to demonstrate evidence of a custom, policy, or practice of deliberate indifference that is attributable to the municipality. Accordingly, Plaintiff's official capacity claim against Defendant Privett should be dismissed.

### 2. Plaintiff's individual capacity claim against Privett warrants dismissal.

Plaintiff's Complaint also recites that he is suing Defendant Privett in her individual capacity. (R. 1-1, at 18). However, Plaintiff offered no testimony, discovery, or other evidence in the record to demonstrate an Eighth Amendment deliberate indifference claim against Defendant Privett in her individual capacity. Accordingly, for the reasons explained below, the Court will recommend Plaintiff's individual capacity claim against Defendant Privett be dismissed.

To prevail on his individual capacity claim, Plaintiff must prove that Defendant Privett, acting under color of state law, deprived him of a right guaranteed by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Daniels v. Williams*, 474 U.S. 327, 330 (1986). The United States Supreme Court has held that a prisoner's access to reasonably adequate medical care is a right guaranteed by the Eighth Amendment's proscription on cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In the medical context, Plaintiff must demonstrate that Defendant Privett acted with "deliberate indifference to [his] serious medical needs." *Id.* at 104 ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."). This definition extends to indifference "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* Not every prisoner's claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle*, 429 U.S. at 105. A showing of negligence or medical malpractice fails to rise to the level of a constitutional deprivation; rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106; *Farmer*, 511 U.S. at 834-35. *See also Smith v. Franklin County*, 227 F. Supp. 2d 667, 678 (E.D. Ky. 2002).

A deliberate indifference claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Cornstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires Plaintiff to demonstrate that his deprivation was "sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious if it has "been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's treatment." *Smith*, 227 F. Supp. 2d at

676 n.10 (internal citation and quotation marks omitted); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897-98 (6th Cir. 2004)). The medical need must also require immediate attention. *Smith*, 227 F. Supp. 2d at 676 n.10. Where a prisoner's deliberate indifference claim is based upon a delay in treatment, in order to satisfy the objective component the prisoner "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County*, 238 F.3d 739, 743 (6th Cir. 2001) (holding that the prisoner failed to satisfy the objective component of his deliberate indifference claim when he did not offer any medical evidence to show that he suffered a detrimental effect from being kept from his scheduled dialysis).

The subjective component requires Plaintiff to demonstrate that the prison official, with a "sufficiently culpable state of mind," acted with deliberate indifference to a substantial risk that the prisoner would suffer serious harm. *Cornstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 834); *Brown v. Bargery*, 207 F.3d 863 (6th Cir. 2000). To show the requisite mental culpability, Plaintiff must establish that the official being sued knew of and disregarded "an excessive risk to inmate health and safety," meaning the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and also that the official actually drew such an inference and disregarded that risk. *Farmer*, 511 U.S. at 837.

A prisoner's claim does not rise to the level of a constitutional deprivation on a showing that Plaintiff preferred a different course of treatment or disagreed with the medical staff's diagnosis. An inmate "is not constitutionally entitled to a particular course of treatment on his own assessment of its necessity" and "disagreement with the medical treatment received does not rise to the level of a constitutional violation." *Smith*, 227 F. Supp. 2d at 678. Disagreements over medical care cannot create a constitutional claim unless the medical care falls short of

"contemporary standards of decency," *Estelle*, 429 U.S. at 103, or demonstrates an "unnecessary and wanton infliction of pain." *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996).

Likewise, where a prisoner has received medical attention and the dispute is over the adequacy of the treatment, generally "a court will not second-guess the judgment of the medical professionals providing such treatment" absent a showing that it was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotation marks omitted). *See also Clark v. Corrections Corp.*, 98 F. App'x 413, 416 (6th Cir. 2004) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Accordingly, when it comes to diagnostic testing, as the United States Supreme Court expressly stated, "the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]" *Estelle*, 429 U.S. at 107.

In *Alspaugh*, for instance, the prisoner complained of a neck injury, but the prison's medical staff initially refused to treat him, and his continued complaints of neck pain led only to minor remedies: a diagnostic x-ray, a soft cervical collar and a prescription for Motrin. *Alspaugh*, 643 F.3d at 165. This "low-level" treatment continued for ten months. Alspaugh would eventually be treated through surgical intervention, but this occurred only after he was transferred to a different detention facility. *Id.* The Sixth Circuit determined that the medical staff's "low-level" treatment was not constitutionally deficient, noting that "[w]hile at multiple points . . . [he] certainly would have desired more aggressive treatment, he was at no point denied treatment." *Id.* at 169. As a result, the Sixth Circuit determined that second-guessing the medical judgments of

the facility's medical staff was improper, and affirmed the district court's order granting summary judgment on the claim of deliberate indifference to the inmate's medical care. *Id.* at 169.

Here, Plaintiff failed to establish a genuine issue of material fact exists that could demonstrate Defendant Privett acted with "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 104. First, Plaintiff failed to demonstrate the requisite objective evidence that his deprivation was "sufficiently serious." *Farmer*, 511 U.S. at 834. There is no evidence of record from which a jury could find that Plaintiff's medical need required immediate attention or was one that was so obvious even a lay person would easily recognize the necessity for a doctor's treatment. *Smith*, 227 F. Supp. 2d at 676 n.10.

Furthermore, to the extent Plaintiff argues that Defendant Privett was deliberately indifferent by delaying the MRI ordered by the x-ray examiner, this allegation even if taken as true fails to rise to the level of deliberate indifference. Just like the prisoner in *Napier*, who could not meet the objective prong of his deliberate indifference claim for delay in medical treatment without verifying medical evidence, here, the record is devoid of any verifying medical evidence. Defendant did not offer expert testimony in support of his claim. Nor did he submit any non-expert medical evidence to establish a detrimental effect in any delay of Plaintiff's medical treatment. Bare allegations alone are insufficient to satisfy the objective element of his deliberate indifference claim based upon an alleged delay in treatment. *Napier*, 238 F.3d at 743. Accordingly, dismissal is proper.

Plaintiff also failed to demonstrate the requisite subjective component of his deliberate indifference claim. Aside from the allegations in his Complaint, Plaintiff introduced no evidence that Defendant Privett, with a "sufficiently culpable state of mind," acted with deliberate indifference to a substantial risk that Plaintiff would suffer serious harm. *Cornstock*, 273 F.3d at

703. The record does not support a finding that Defendant Privett was subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and then actually drew such an inference and disregarded the risk. *Farmer*, 511 U.S. at 837. To the contrary, by Plaintiff's own account, Defendant Privett voiced a belief that Plaintiff did not require immediate medical treatment but rather "was just seeking attention." (*See* R. 29, at 2). However, even if Defendant Privett was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, the evidence does not demonstrate that Privett disregarded that risk. To the contrary, Plaintiff acknowledges that he did receive treatment for his injuries, conceding that a Detention Center physician treated him. (R. 29, at 2).

Rather, just as in *Alspaugh*, 643 F.3d 62, Plaintiff's allegations target the medical staff's failure to provide a more aggressive diagnostic strategy, criticizing the physician's decision to take an x-ray impression first before progressing to an MRI scan. The allegations in Plaintiff's Complaint indicate that Plaintiff filed the medical grievance when, after he had filed medical slips trying to get an MRI, the facility physician ordered a diagnostic x-ray. (R. 1-1, at 19). Plaintiff explains he filed the grievance because he thought "medical was trying to put him off." (*Id.*). However, Plaintiff admits after the Detention Center physician reviewed the results of the x-ray, the physician ordered the MRI. While Plaintiff alleges it took 60 days for the physician to order the MRI, Plaintiff offers no evidence to show that Nurse Privett, as opposed to the facility physician, played any part in the diagnostic decision. *See Cornstock*, 273 F.3d at 712 (physician's assistant not deliberately indifferent when assistant played no part in prison psychologist's decision to take prisoner off of suicide watch). Nor does Plaintiff allege that he filed a further grievance on the issue. (*See* R. 1-1, at 19-20).

Moreover, to the extent Plaintiff is arguing that Defendant was deliberately indifferent in her diagnosis, his claim fails as a matter of law. Plaintiff's allegations regarding the adequacy of his medical treatment do not support a finding that the treatment he received was so "woefully inadequate" as to amount to no treatment at all, but rather that Plaintiff disagreed with the medical staff's diagnostic judgment. *See Smith*, 227 F. Supp. 2d at 678. *See also Clark v. Corrections Corp.*, 98 F. App'x 413, 416 (6th Cir. 2004) (affirming dismissal of claim alleging deliberate indifference to medical needs where plaintiff received medical treatment and the dispute concerned the adequacy of that treatment) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Plaintiff's claim improperly calls for second-guessing the staff's medical judgment regarding what "additional diagnostic techniques or forms of treatment is indicated." *Estelle*, 429 U.S. at 107. The Supreme Court expressly stated that such decisions fall short of the deliberate indifference standard and at most could constitute medical malpractice claims. *See id.* Even construing all facts in the light most favorable to the Plaintiff and drawing all reasonable inferences in his favor, Plaintiff's allegations that he disagreed with the physician's diagnostic strategy and that Defendant Privett did not provide a particular course of treatment that he personally deemed necessary—an immediate MRI—does not rise to the level of a constitutional violation. *Smith*, 227 F. Supp. 2d 678 (citing *Estelle*, 429 U.S. at 105-06).

In sum, Plaintiff failed to demonstrate either the objective or subjective components of his deliberate indifference claim against Defendant Privett. Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, here, Plaintiff failed to set forth evidence to demonstrate that there is a genuine issue of material fact such that a jury could return a verdict in his favor at trial. Accordingly, summary judgment is appropriate as a matter of law.

**B.**     **Alternatively, Plaintiff's claims should be dismissed for failure to prosecute.**

In the alternative, Plaintiff's claim against Defendant Privett should be dismissed based upon Plaintiff's consistent expression of lack of interest in prosecuting this action further.   A federal court is invested with inherent authority to dismiss an action on its own initiative if a party fails to prosecute the case or comply with a court order, the Federal Rules of Civil Procedure, or a court's own local rules.   Fed. R. Civ. P. 41(b); *see also Rogers v. City of Warren*, 302 F. App'x 371, 375 n.4 (6th Cir. 2008) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962) (stating that although Rule 41(b) does not expressly provide for a sua sponte dismissal, "it is well-settled that the district court can enter a sua sponte order of dismissal under Rule 41(b).")).   The rule allows district courts "to manage their dockets and avoid unnecessary burdens on both courts and opposing parties." *Shavers v. Bergh*, 516 F. App'x 568, 569 (6th Cir. 2013); *see also Palasty v. Hawk*, 15 F. App'x 197, 199 (6th Cir. 2001) (citing *Knoll v. American Tel & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (noting that dismissal of claims for failure to prosecute was available to the district court as a tool to manage its docket and to avoid unnecessary burdens on the court and opposing parties, after certain plaintiffs failed to respond to a court order requiring filing of status information)).

The Sixth Circuit assesses four factors in weighing the appropriateness of a district court's decision to dismiss a case for failure to prosecute:

(1)     whether the party's failure is due to willfulness, bad faith, or fault;
(2)     whether the adversary was prejudiced by the dismissed party's conduct;
(3)     whether the dismissed party was warned that failure to cooperate could lead to dismissal; and
(4)     whether less drastic sanctions were imposed or considered before dismissal of the action.

*Bowles v. City of Cleveland*, 129 F. App'x 239, 242 (6th Cir. 2005).  *See also Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (citing *Knoll*, 176 F.3d at 363).  "To support a finding that

a plaintiff's actions were motivated by willfulness, bad faith, or fault," his conduct "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (citing *T. W. Wang*, 420 F.3d at 643). Likewise, a defendant is prejudiced by the plaintiff's conduct "where the defendant waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Schaefer*, 529 F.3d at 737 (internal quotation marks and citation omitted).

While none of these factors is dispositive, "a case may be dismissed by a district court where there is a clear record of delay or contumacious conduct on the part of the plaintiff" or if the plaintiff has "actual notice that dismissal is contemplated." *Bowles*, 129 F. App'x at 242 (citing *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586 (6th Cir. 2001)); *Erba v. Kula*, 113 F. App'x 74, 75 (6th Cir. 2004) (citing *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988)). The Sixth Circuit cautioned that, absent notice that dismissal is contemplated, dismissal "is a harsh sanction which the court should order only in extreme situations showing a clear record of delay or contumacious conduct by the plaintiff." *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991) (failure to respond to defendants' motion to dismiss, standing alone, was insufficient to amount to a failure to prosecute absent evidence in record that prisoner had repeatedly failed to adhere to the court's procedural rules) (internal citations omitted). *But see Bowles*, 129 F. App'x at 240 (dismissal without prejudice following failure of plaintiff's counsel to attend status conference affirmed when plaintiff's counsel was informed that if he did not appear, case would be dismissed).

In the present case, the four factors outlined by the Sixth Circuit in *Bowles* indicate that, in light of the totality of the circumstances, Eversole's conduct supports dismissal of his case without prejudice. First, the record indicates that the Plaintiff's failure to prosecute is due to willfulness,

bad faith, or fault because his conduct displays a reckless disregard for the effect of his conduct on these proceedings. *Schafer*, 529 F.3d at 737. Eversole failed to keep the Court informed of his current address, failed to serve Defendant Jourdan, and failed to respond to two successive Court Orders requiring Plaintiff to provide an address for Jourdan, even when the Court warned Plaintiff that his claim could face dismissal. (R. 11, 22). A party's failure to act in the face of a prior warning from the court that the case would be dismissed is a powerful indication of willful noncompliance. *Lovejoy v. Owens*, 92-4207, 1994 WL 91814, at *2 (6th Cir. 1994) (citing *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988)). Moreover, Eversole failed to disclose any expert witnesses in compliance with the Court's Scheduling Order. (R. 10). This is particularly problematic when Plaintiff failed to dispute or otherwise respond to Defendant Privett's claim in her Motion for Summary Judgment that expert testimony is necessary to meet his burden of establishing that Privett is liable. (R. 33-1, at 1-2). Finally, Eversole's failure to respond to both Defendant Ballard's Motion for Judgment on the Pleadings (R. 20) and Defendant Privett's Motion for Summary Judgment (R. 33) indicates willfulness, bad faith, or fault in light of the surrounding circumstances. This fact, in conjunction with Plaintiff's repeated failure to affirmatively move the case forward, indicates that Plaintiff has abandoned his case, and supports dismissal.

The second and third *Bowles* factors also indicate Eversole's claims warrant dismissal. The Defendant has expended time and resources to defend this action. While the Court finds that the prejudice to Defendant Privett at this point may be minimal, funds were nonetheless required to be expended in defending this action, including propounding and responding to discovery as well as filing substantive motions. Likewise, the Court put Eversole on notice on multiple occasions that failure to comply with court orders or otherwise move forward with the prosecution of this

action could adversely affect his case, and may result in the dismissal of his claims. (*See* R. 22, 34).

Lastly, the fourth *Bowles* factor looks to whether less drastic sanctions were imposed or considered. As set forth *supra*, numerous Court Orders have issued notifying Plaintiff of necessary action, and dismissing claims against two other Defendants, with no response from Plaintiff, indicating that he has effectively abandoned this action. Furthermore, the objection period to this Report and Recommendation will serve as further advance notice to Plaintiff and provide him a final opportunity to respond prior to dismissal. *See Carver*, 946 F.3d at 454.

In sum, Plaintiff has substantially failed to prosecute this civil action. Plaintiff's inaction, not just in his failure to respond to Privett's subject Motion, but under the totality of the circumstances, indicates that his failure to prosecute this case is either a willful decision on his part or in reckless disregard for the effect that his conduct has upon his case. He failed to timely comply with orders of this Court to effect service on one of the Defendants, failed to oppose multiple defense motions including Defendant Privett's Motion for Summary Judgment, and failed to timely disclose any expert testimony or other verified medical evidence to support his claim of deliberate indifference. Plaintiff has failed to build and pursue his case in compliance with the deadlines set forth by the Federal Rules of Civil Procedure, Local Rules, and the orders of this Court. Plaintiff has received repeated notice that failure to comply with the orders of this Court and the Federal Rules of Civil Procedure could result in dismissal, but he has failed to respond, failed to request any extension of time, and failed to otherwise indicate that he has not abandoned his claims. Accordingly, Plaintiff's remaining claims against Defendant Privett in this civil action should be dismissed.

## IV.      CONCLUSION AND RECOMMENDATIONS

As discussed above, Plaintiff has failed to demonstrate that there is a genuine dispute of material fact such that there is sufficient evidence for a jury to return a verdict in his favor against Defendant Privett in either her official or individual capacities. Plaintiff has also failed to prosecute his claims in this civil action. Accordingly,

**IT IS RECOMMENDED** that:

1.	Defendant Privett's Motion for Summary Judgment (R. 33) be **granted,** and the claims against Defendant Privett in both her official and individual capacities be **dismissed with prejudice;**

2.	in the alternative, the claims against Defendant Privett in both her official and individual capacities be **dismissed without prejudice** for failure to prosecute; and

3.	this civil action **be stricken** from the active docket of this Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 19th day of December, 2017.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\civil lexington\2017\17-155 R&R dismiss Def Privett D3.docx